UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re
PETER SIMON LUNA and
KRISTEL ROSE LUNA,
           Debtors.                     No. 7-08-11422 SA


DARYL MARCOTT,
           Plaintiff,

v.                                       Adv. No. 08-1084 S

PETER SIMON LUNA and
KRISTEL ROSE LUNA,
           Defendants.

## MEMORANDUM OPINION ON
## CROSS MOTIONS FOR SUMMARY JUDGMENT

This matter is before the Court on cross motions for summary judgment. Plaintiff appears through his attorney Wallin and Briones Law Firm LLC (Brandon Huss and Thomas R. Briones). Defendants appear through their attorney Michael K. Daniels. This is a core proceeding to determine dischargeability of a debt. 28 U.S.C. § 157(b)(2)(I). For the reasons set forth below, Plaintiff's complaint will be dismissed with prejudice[1].

Plaintiff filed a First Amended Complaint to determine dischargeability under 11 U.S.C. § 523(a)(2) on October 27, 2008. Doc 10. Defendants answered on November 3, 2008. Doc 12. After several pretrial conferences, discovery was set to close in December, 2009. On December 15, 2009, Plaintiff filed a Motion for Summary Judgment with accompanying Memorandum Brief and

---

[1]Therefore, the Court will also deny as moot Defendant Kristel Luna's Motion for Judgment on the Pleadings. Doc 41.

exhibits[2].  Docs 45, 45-1.  Defendants filed a Response to
Plaintiff's Motion for Summary Judgment and a Cross Motion for
Summary Judgment on December 18, 2009.  Doc 46.  In their
Response, Defendants asked for an award of costs and fees under
Section 523(d)[3].  On December 18, 2009, Defendants also filed a
Motion for Summary Judgment[4] with exhibits[5].  Doc 47.  Again,

---

[2]The exhibits are: 1) Promissory Note dated 12/22/2006, 2)
Affidavit of Daryl Marcott, 3) Notice of default dated July 10,
2007 and related United States Post Office certified mail
receipt, 4) copies of responses to Plaintiff's Interrogatories to
Defendants numbered 13, 14 and 15, and 5) copy of a mortgage from
Kristel R. Luna to Daryl L. Marcott dated July 9, 2007 for
property in Albuquerque, New Mexico (that lacks any recording
information) and a copy of a related Real Estate Mortgage Note.

[3]That subsection provides:
If a creditor requests a determination of
dischargeability of a consumer debt under subsection
(a)(2) of this section, and such debt is discharged,
the court shall grant judgment in favor of the debtor
for the costs of, and a reasonable attorney's fee for,
the proceeding if the court finds that the position of
the creditor was not substantially justified, except
that the court shall not award such costs and fees if
special circumstances would make the award unjust.

[4]Defendants explain the purpose of this second Motion for
Summary Judgment as follows:
Plaintiff filed a Motion for Summary Judgment on
December 15, 2009.  Docket No. 45.  That motion
expressly states it is focused on post default activity
by Defendants during late 2007, and does not cover the
inception of the loan.  Defendants filed a response to
that summary judgment motion on December 18, 2009,
which included a cross motion for summary judgment in
their favor on the post default activity.  Docket No.
46.  The purpose of this motion is to focus on all
remaining allegations in the Complaint and First
Amended Complaint, which center on the inception of the
loan in December of 2006.
                                        (continued...)

-2-

Defendants asked for an award of costs and fees under Section 523(d). Plaintiff filed a Reply and then an Amended Reply in Support of his Motion for Summary Judgment on February 17, 2010. Doc 55. Plaintiff also filed a Response and then an Amended Response to Defendants' Motion for Summary Judgment on February 17, 2010. Doc 56. Defendants elected to not file a reply to Plaintiff's response.

## Summary Judgment

Summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Bankruptcy Rule 7056(c)[6]. In

---

[4](...continued)
Plaintiff agrees that his claim that the initial debt was incurred by fraud is not dealt with in his Motion for Summary Judgment. Doc 55, p. 7. He envisions a future trial to determine whether the initial debt was incurred by fraud. Id.

[5]The exhibits are: 1)Affidavit of Peter Luna (An unsigned affidavit of Peter Luna was attached to both Docs 46 and 47 as Docs 46-1 and 47-1 respectively; Defendants obtained an Order allowing substitution of exhibits, and the properly executed affidavit now appears as Doc 53.), 2) Plaintiff Marcott's Answers to Defendant's First Set of Interrogatories, 3) Plaintiff Marcott's Responses to Defendant's First Set of Requests for Production of Documents to Plaintiff (without attachments), and 4) Promissory Note dated 12/22/2006.

[6]Bankruptcy Rule 7056 incorporates Fed.R.Civ.P. 56. These motions were filed in 2009. Rule 56, before its 2010 amendments, provided:

Rule 56. Summary Judgment
(a) By a Claiming Party. A party claiming relief may move, with or without supporting affidavits, for summary judgment on all or part of the claim. The
(continued...)

-3-

[6](...continued)
motion may be filed at any time after:
        (1) 20 days have passed from commencement of the
        action; or
        (2) the opposing party serves a motion for summary
        judgment.
(b) By a Defending Party.  A party against whom relief
is sought may move at any time, with or without
supporting affidavits, for summary judgment on all or
part of the claim.
(c) Serving the Motion; Proceedings.  The motion must
be served at least 10 days before the day set for the
hearing.  An opposing party may serve opposing
affidavits before the hearing day.  The judgment sought
should be rendered if the pleadings, the discovery and
disclosure materials on file, and any affidavits show
that there is no genuine issue as to any material fact
and that the movant is entitled to judgment as a matter
of law.
(d) Case Not Fully Adjudicated on the Motion.
        (1) Establishing Facts.  If summary judgment is
        not rendered on the whole action, the court
        should, to the extent practicable, determine what
        material facts are not genuinely at issue.  The
        court should so determine by examining the
        pleadings and evidence before it and by
        interrogating the attorneys.  It should then issue
        an order specifying what facts--including items of
        damages or other relief--are not genuinely at
        issue.  The facts so specified must be treated as
        established in the action.
        (2) Establishing Liability.  An interlocutory
        summary judgment may be rendered on liability
        alone, even if there is a genuine issue on the
        amount of damages.
(e) Affidavits; Further Testimony.
        (1) In General.  A supporting or opposing
        affidavit must be made on personal knowledge, set
        out facts that would be admissible in evidence,
        and show that the affiant is competent to testify
        on the matters stated.  If a paper or part of a
        paper is referred to in an affidavit, a sworn or
        certified copy must be attached to or served with
        the affidavit.  The court may permit an affidavit
        to be supplemented or opposed by depositions,
                                        (continued...)

determining the facts for summary judgment purposes, the Court

may rely on affidavits made with personal knowledge that set

forth specific facts otherwise admissible in evidence and sworn

or certified copies of papers attached to the affidavits.

Fed.R.Civ.P. 56(e).  When a motion for summary judgment is made

and supported by affidavits or other evidence, an adverse party

may not rest upon mere allegations or denials.  <u>Id.</u>  Rather,

"Rule 56(e) ... requires the nonmoving party to go beyond the

---

[6](...continued)
        answers to interrogatories, or additional
        affidavits.
        (2) Opposing Party's Obligation to Respond.  When
        a motion for summary judgment is properly made and
        supported, an opposing party may not rely merely
        on allegations or denials in its own pleading;
        rather, its response must--by affidavits or as
        otherwise provided in this rule--set out specific
        facts showing a genuine issue for trial.  If the
        opposing party does not so respond, summary
        judgment should, if appropriate, be entered
        against that party.
(f) When Affidavits Are Unavailable.  If a party
opposing the motion shows by affidavit that, for
specified reasons, it cannot present facts essential to
justify its opposition, the court may:
        (1) deny the motion;
        (2) order a continuance to enable affidavits to be
        obtained, depositions to be taken, or other
        discovery to be undertaken; or
        (3) issue any other just order.
(g) Affidavit Submitted in Bad Faith.  If satisfied
that an affidavit under this rule is submitted in bad
faith or solely for delay, the court must order the
submitting party to pay the other party the reasonable
expenses, including attorney's fees, it incurred as a
result. An offending party or attorney may also be held
in contempt.
Fed.R.Civ.P. 56 (2009).

pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). "Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." Id. The court does not try the case on competing affidavits or depositions; the court's function is only to determine if there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

In ruling on a motion for summary judgment, the trial court views the evidence and draws reasonable inferences therefrom in the light most favorable to the nonmoving party. Mountain Highlands, LLC v. Hendricks, 616 F.3d 1167, 1169-70 (10th Cir. 2010)(citing Garrison v. Gambro, Inc., 428 F.3d 933, 935 (10th Cir. 2005)). On those issues for which it bears the burden of proof at trial, the nonmovant "must go beyond the pleadings and designate specific facts so as to make a showing sufficient to establish the existence of an element essential to [its] case in order to survive summary judgment." Id. at 1170 (quoting Cardoso v. Calbone, 490 F.3d 1194, 1197 (10th Cir. 2007)) (internal quotation marks omitted). "[F]ailure of proof of an essential element renders all other facts immaterial." Id. (quoting Koch

-6-

v. Koch Indus., Inc., 203 F.3d 1202, 1212 (10th Cir.), cert. denied, 531 U.S. 926 (2000)).

New Mexico LBR 7056-1[7] governs summary judgment motions. It provides, in part:

> The memorandum in support of the motion shall set out as its opening a concise statement of all of the material facts as to which movant contends no genuine issue exists. The facts shall be numbered and shall refer with particularity to those portions of the record upon which movant relies.

> A memorandum in opposition to the motion shall contain a concise statement of the material facts as to which the party contends a genuine issue does exist. Each fact in dispute shall be numbered, shall refer with particularity to those portions of the record upon which the opposing party relies, and shall state the number of the movant's fact that is disputed. All material facts set forth in the statement of the movant shall be deemed admitted unless specifically controverted.

## NONDISCHARGEABILITY

This adversary seeks to declare a debt nondischargeable under Section 523(a)(2)(A), which provides:

> A discharge under section 727 ... of this title does not discharge an individual debtor from any debt--
> ...
> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by--

---

[7]On August 2, 2010, the United States Bankruptcy Court for the District of New Mexico adopted revised local rules. The portion quoted in the text of this opinion is the former rule, which was applicable when these motions were filed. The new rule is substantively the same.

> (A) false pretenses, a false representation, or actual
> fraud, other than a statement respecting the debtor's
> or an insider's financial condition[.]

Section 523(a)(2)(A) makes certain common-law torts
nondischargeable in bankruptcy. <u>Field v. Mans</u>, 516 U.S. 59, 69
(1995). "The operative terms in § 523(a)(2)(A), ... 'false
pretenses, a false representation, or actual fraud,' carry the
acquired meaning of terms of art. They are common-law terms,
and, ... in the case of 'actual fraud,' ... they imply elements
that the common law has defined them to include." <u>Id.</u>
Therefore, the bankruptcy court should look to the common law of
torts for the elements of fraud. The <u>Field</u> court stated that the
most widely accepted distillation of the common law of torts was
the Restatement (Second) or Torts (1976). ("Restatement"). <u>Id.</u>
at 70.

The Restatement § 525 provides:

> § 525. Liability For Fraudulent Misrepresentation.
> One who fraudulently makes a misrepresentation of fact,
> opinion, intention or law for the purpose of inducing
> another to act or to refrain from action in reliance
> upon it, is subject to liability to the other in deceit
> for pecuniary loss caused to him by his justifiable
> reliance upon the misrepresentation.

The Court of Appeals for the Tenth Circuit recently stated
what a plaintiff must prove to succeed under Section 523(a)(2)(A)
in the Restatement § 525 context:

> In order to establish a non-dischargeable claim
> under this subsection, a creditor must prove the
> following elements by a preponderance of the evidence:
> "The debtor made a false representation; the debtor

-8-

made the representation with the intent to deceive the creditor; the creditor relied on the representation; the creditor's reliance was reasonable; and the debtor's representation caused the creditor to sustain a loss." <u>Fowler Bros. v. Young (In re Young)</u>, 91 F.3d 1367, 1373 (10th Cir. 1996).[8]

<u>Johnson v. Riebesell (In re Riebesell)</u>, 586 F.3d 782, 789 (10th Cir. 2009). In other words, the creditor must prove:

- a false representation,

- made with the intent to deceive,

- on which the creditor actually and justifiable relied, and

- the representation caused the creditor to sustain a loss.

**STATEMENT OF FACTS**

The Court has reviewed the answer to the complaint and the parties' responses to the various statements of undisputed facts. Before launching into a listing of the facts, the Court reminds the parties of Fed.R.Civ.P. 56(e)(2):

> (2) Opposing Party's Obligation to Respond. When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must--by affidavits or as otherwise provided in this rule--set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

Fed.R.Civ.P. 56(e)(2) (2009)(amended 12/1/2010). <u>See also</u> NM LBR 7056-1 (Facts disputed by nonmovant must cite to record to

---

[8]As noted by the <u>Riebesell</u> court in 586 F.3d at 789 n.3, the Supreme Court has determined that the proper standard is "justifiable reliance" rather than "reasonable reliance." (citing <u>Field v. Mans</u>, 516 U.S. 59, 74 (1995).)

-9-

demonstrate dispute.  Movant's facts are deemed admitted unless specifically controverted.)  In determining the undisputed facts in these motions, the Court enforced these rules strictly.

**FACTS DERIVED FROM ANSWERS TO FIRST AMENDED COMPLAINT**

Defendants admitted (doc 12) these allegations in Plaintiff's First Amended Complaint (doc 10):

1[9].  This Court has jurisdiction over the subject matter of this Complaint as a core proceeding pursuant to the provisions of 28 U.S.C. §§1334 and 157(b)(2)(I) and 11 U.S.C. §523 because this is a proceeding to determine the dischargeability of a particular debt.

2.  Peter Simon Luna and Kristel Rose Luna (the "Defendants") filed a Voluntary Petition for Relief under Chapter 7 of Title 11 of the United State Code (the "Code") in this Court on May 6, 2008.

4.  The last day for filing dischargeability complaints has been set at August 5, 2008.  This Complaint has been timely filed.

5.  Plaintiff, Daryl Marcott, of 7405 Fairmont Ave El Cerrito, CA 94530, is a creditor of the above-named debtor and is the holder of an unsecured claim in the amount of $18,750.

---

[9]The numbers in this column specify the paragraph in the complaint or, below, the number of the proposed undisputed fact from a motion for summary judgment.

-10-

6.  Defendant, Peter Simon Luna, of 1004 Tierra Viva Ct NW Albuquerque, NM 87107, is the debtor in the above-captioned proceedings.

7.  Defendant, Kristel Rose Luna, of 1004 Tierra Viva Ct NW Albuquerque, NM 87107, is the debtor in the above-captioned proceedings.

8.  On December 22, 2006, Plaintiff entered into a transaction with defendant Peter Luna whereby Plaintiff loaned defendant $12,300 in return for which, defendant gave Plaintiff a promissory note for the sum of $15,000 and $3,750 in interest for the first ninety days.

12. On July 09, 2007, defendant executed a Real Estate Mortgage Note in the sum of $16,300 in satisfaction of the original promissory note.

19. Thereafter Defendants filed their petition for relief under Chapter 7 of Title 11 of the United States Code in the United States Bankruptcy Court for the District of New Mexico, and the defendant listed as one of their debts this obligation due to Plaintiff.

The remaining facts in the Amended Complaint were denied.

**FACTS ESTABLISHED BY DEFENDANTS' RESPONSE TO PLAINTIFF'S STATEMENT OF UNDISPUTED MATERIAL FACTS**

        Defendants did not dispute (doc 46) the following Plaintiff's Undisputed Material Facts (Doc 45-1):

-11-

1.  This Court has jurisdiction over the subject matter of Plaintiff's Complaint as a core proceeding pursuant to the provisions of 28 U.S.C. §§ 1334 and 157(b)(2)(I) and 11 U.S.C. § 523 because this is a proceeding to determine the dischargeability of a debt.

2.  On December 22, 2006, Plaintiff Daryl Marcott ("Marcott") entered into a transaction with Defendant Peter Luna ("Luna") whereby Marcott loaned Luna $12,300 in return for which Luna gave Plaintiff a promissory note in the sum of $15,000 plus $3,750 in interest for the first 90 days.

3.  The Promissory Note provided that Luna would pay three monthly payments from December 30, 2006 through March 30, 2007 and would pay the entire amount of principal and interest on or before March 6, 2007.

4.  Luna did not repay the debt as required by March 6, 2007.

5.  In June, 2007, Marcott sent a Notice of Default to Luna for his failure to pay the amounts outstanding under the Promissory Note and indicated that if the Note was not repaid, a lawsuit would be filed to collect the amounts owing.

6.  After Peter and Kristel Luna (the "Lunas") received the Notice of Default, Marcott agreed to extend the time for repayment in exchange for the Lunas providing a mortgage on real property owned by Kristel Luna, which was located at

-12-

2404 Rozinante Drive NW, Albuquerque, NM 87104 ("Real
Property").

7.  On July 9, 2007, Luna executed a Real Estate Mortgage Note
    ("Mortgage Note") in the sum of $16,300, which was to be in
    satisfaction of the original promissory note.[10]

8.  On July 10, 2007, Marcott also executed the Mortgage Note.[11]

9.  On July 9, 2007, Kristel Luna executed the Mortgage before a
    notary and sent by fascimile the signed Mortgage to Marcott.

10. Marcott could not record the Mortgage because the Lunas
    never sent him the original Mortgage despite Marcott's
    repeated demands.

11. Marcott contacted Luna on many occasions by phone to get
    Luna to record the Mortgage and Note.  Each time Marcott
    spoke to Luna, Luna would always give Marcott an excuse as
    to why Luna did not record the Mortgage yet, including his

---

[10]In their response, Defendants admit that Peter Luna signed
a Real Estate Mortgage Note but do not know the exact date this
occurred.  Lacking a citation to the record, the entire fact is
deemed admitted.  However, the Court finds that Plaintiff has
just created his own genuine fact issue.  Fact 6 immediately
above states that Plaintiff agreed to extend the time for
repayment; fact 7 states that the Mortgage Note was in full
satisfaction of the original note.  See also Plaintiff's
Memorandum Brief, doc 45-1 p. 8. (" ... a note to allow the Lunas
additional time to repay Marcott for the loan he had previously
given them.")  From the record it is generally unclear what the
parties' understandings were.

[11]In their response, Defendants admit that Marcott signed a
Real Estate Mortgage Note but do not know the exact date this
occurred.  Lacking a citation to the record, the entire fact is
deemed admitted.

-13-

belief that he was very close to selling the house in a short sale[12] so he would be paying Marcott back soon.[13]

14. The Lunas filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code on May 6, 2008.

## FACTS ESTABLISHED BY PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF UNDISPUTED MATERIAL FACTS

Plaintiff's Amended Response did not dispute (doc 56) the following Defendants' Undisputed Material Facts (doc 47):

1. On July 10, 2008, Plaintiff filed a complaint in the above captioned adversary proceeding.

2. Plaintiff lent $12,300 to Defendant on December 22, 2006.

---

[12]This fact is nonsensical.  By definition a short sale leaves nothing for the property owner.
    A short sale is, in its simplest definition, a sale by a willing seller to a willing buyer for less than the total encumbrances on the home with the consent of the underlying lienholders who agree to take less than what they are owed.  Short sales generally occur when the value of the home is less than the total consensual encumbrances.  The lienholders do not generally waive their deficiency balances in this process. When properly executed, a short sale benefits the seller by getting him or her out from under the constant fear and stress of foreclosure.  A short sale benefits the lender by getting the distressed property sold quickly; thereby allowing the lender to quantify its loss without the time and expense of a foreclosure.
Rupp v. Ayres (In re Fabbro), 411 B.R. 407, 413 n. 7 (Bankr. D. Utah 2009).  How could Defendants pay Plaintiff from a sale which yields them nothing?

[13]In their response, Defendants admit they did not record the mortgage and do not respond to the rest of the undisputed fact.  The uncontroverted fact is deemed admitted.

-14-

3.    Defendant was a contract employee of Veritas Mortgage at the
      time of the loan.[14]

5.    Defendant worked for Veritas Mortgage for approximately 25
      months.  Veritas Mortgage went out of business soon
      afterward.[15]

6.    Defendant lost personal funds invested with Vista Studios
      Inc. soon after the loan from Plaintiff.  Many other
      investors, including officers of Veritas Mortgage and
      friends and relatives of Defendant, also lost significant
      sums invested in Vista Studios.[16]

---

[14]Plaintiff's Amended Response states "Plaintiff is without
sufficient information to admit or deny the statement and
therefore deny the statement.  This alleged undisputed fact is
irrelevant to any issue contained in the Motion."  The issue at
this stage is not whether Plaintiff lacks information; rather, it
is where in the record is there a fact contrary to that stated.
By failing to supply or indicate a contrary fact in the record,
this Proposed Fact is deemed admitted.  Additionally, whether it
is relevant or irrelevant is not the issue.  And, the Court
cannot understand how Plaintiff can claim this statement
irrelevant when in the First Amended Complaint ¶¶ 9, 10 and 13 he
alleges that Defendant Peter Luna used the name Veritas to
"entice" him into the loan transaction, that Veritas told
Plaintiff that Peter Luna was not acting within the scope of his
employment, and that Peter Luna represented that Veritas was a
borrower.  In fact, the Court finds Defendant's Veritas status
relevant.

[15]Plaintiff's response to this fact is the same as to fact
3.  This is insufficient and the fact is deemed admitted.
Additionally, this fact deals with Veritas and is relevant.

[16]This fact is deemed admitted despite Plaintiff's lack of
information and denial because he cited no contrary fact in the
record.

-15-

7.    Subsequent to the lost investment in Vista Studios,

      Defendants listed their home for sale.  At the time they had

      significant equity in the home, and hoped to sell it for

      sufficient money to pay all their creditors.  Soon

      thereafter the real estate market crashed, and they were

      unable to sell their home for anything in excess of the

      secured debt.  Ultimately the mortgagee foreclosed on the

      home.[17]

8.    After the real estate market crashed Defendants had no

      choice but to file a personal bankruptcy.[18]

**PROPOSED FACTS REJECTED BY THE COURT**

      The Court **does not adopt** the following facts proposed by

Plaintiff (doc 45-1) as undisputed.

12.   The Lunas misled Marcott into believing that they would

      provide him with a Mortgage on the real property in order to

      have Marcott not sue them.[19]

_____

      [17]Again, mere denial for lack of information is insufficient
to controvert the fact.  This fact is deemed admitted.

      [18]Again, mere denial for lack of information is insufficient
to controvert the fact.  This fact is deemed admitted.  And,
again, relevance is not the issue.

      [19]In their response, Defendants deny misleading Plaintiff in
any way.  However, Defendants also argue that Proposed Fact 12
consists of legal argument rather than a factual allegation.  The
Court agrees.  The proposed fact is also self-serving and does
not demonstrate a basis for how plaintiff knew what Defendants
intended or why they took the actions they did.  And, as
discussed below, Plaintiff never describes or develops the
                                              (continued...)

-16-

13. Marcott relied upon the false representations made by the Lunas in not pursuing his legal remedies against them with the understanding that the Lunas would provide him with a mortgage on the real property.[20]

15. As a result of the Lunas' failure to record the original Mortgage or provide the original Mortgage to Marcott for filing as they had promised to do, Marcott has suffered damages in the amount of $18,750, plus pre-judgment and post-judgment interest, reasonable attorneys' fees, and costs.[21]

_____

[19](...continued)
circumstances under which an oral agreement was reached (if any in fact was), what that agreement was, or his failure to pursue legal remedies at the time of the nonpayment. The fact does not specify what representations were made and why Plaintiff believes they are false. In addition, Defendants' Proposed Fact 7 was deemed admitted. That fact establishes that there was sufficient equity in the home to pay all creditors at the there. Therefore, Plaintiff's theory that Defendants misrepresented equity in the house fails. It also defeats Plaintiff's argument that Defendants had a duty to inform him of their financial condition and the lack of equity in the house.

[20]In their response, Defendants deny making false representations, deny that Plaintiff relied on any such representations if they existed, and deny that any such reliance would be justifiable if it actually existed. Defendants also argue that the proposed fact consists of legal argument and not factual allegations. They also argue that Plaintiff has not identified which statements were "false representations." The Court agrees. And, without this knowledge, the Court cannot find actual reliance or justifiable reliance.

[21]In their response, Defendants deny that Plaintiff suffered any damage in relation to the lack of a recorded mortgage. They argue that the damages stemmed from a declining real estate
(continued...)

-17-

The Court **does not adopt** the following fact proposed by Defendants (doc 47) as undisputed.

4.   Defendant served as mortgage broker for Plaintiff on several real estate transactions[22].

## DISCUSSION

First, the Court will make an additional comment on the facts before the Court.  Defendants proposed eight undisputed material facts in their Motion for Summary Judgment.  Doc 47. Plaintiff's Amended Response deals with those eight facts, then propounds "Additional Disputed Facts" 9 through 12.  Doc 56, pp. 3-4.  The Court will disregard these additional facts.

---

[21](...continued)
market.  Defendants also argue that Proposed Fact 15 consists of legal argument instead of factual allegations.  The Court agrees that Proposed Fact 15 is an unsupported conclusory claim that the lack of a recorded mortgage was the proximate cause of the damages.

[22]Plaintiff disputes this fact and cites to Plaintiff's response to interrogatory 6, attached to Defendants' Motion for Summary Judgment at doc 47-2, p. 8.  In fact, the response to interrogatory 6 is totally unrelated to the proposed fact. Interrogatory 6 asks Plaintiff to describe in detail the circumstances under which any anticipated fact witness of his ever interacted with either Defendant.  The answer never mentions Plaintiff in relation to Peter Luna.  Perhaps Plaintiff is referring to interrogatory 7, which asks Plaintiff to specify any representations Plaintiff alleges either Defendant made to Plaintiff at any time.  The response states that Peter Luna helped Plaintiff with a real estate matter in 2006.  Possibly Plaintiff is asserting that Peter Luna served as mortgage broker for Plaintiff on only one real estate transactions.  Therefore, the Court will take proposed fact 4 as disputed.  This finding, however, is irrelevant to the Court's ultimate ruling.

-18-

First, neither Federal Rule of Civil Procedure 56 or any other rule authorizes a plaintiff to introduce new allegations or previously unpled theories in response to the motion for summary judgment. See Fed.R.Civ.P. 56(e)(2) (Non-movant's "response must--by affidavits or as otherwise provided in this rule--set out specific facts showing a genuine issue for trial.") See also Huron v. Western Railroad Builders Corp., 856 F. Supp. 1538, 1543 (D. N.M. 1994):

> In an effort to avoid summary judgment, Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment refers to alleged "additional acts by defendant causing injury." Plaintiff's Memorandum at 19. Specifically, Plaintiff contends that the conductor is responsible for the movement of the train and the safety of the crew and that the conductor was negligent in not ensuring that all crew members were within sight. Plaintiff also contends that the train was being operated in a negligent manner in that the brakeman was required to enter between the cars every time a "cut" was required. Finally, Plaintiff contends that he was ordered to make the cut before the train had been brought to a complete stop.
> Despite having raised such contentions, the court is not able to address them. As an initial matter, Plaintiff has not alleged such acts of negligence in his complaint. Moreover, the "additional acts" cited in Plaintiff's memorandum do not reference, nor are they supported by, affidavits, depositions, answers to interrogatories or other evidence.

Second, courts that have dealt with this situation find that attempted introduction of new materials at the summary judgment stage is an attempt to file an amended complaint that is governed by Fed.R.Civ.P. 15. Kaplan v. Rose, 49 F.3d 1363, 1370 (9th Cir. 1994), cert. denied, 516 U.S. 810 (1995). At this stage of the

-19-

adversary, Plaintiff may amend only with Defendants' consent or
leave of court.  Fed.R.Civ.P. 15(a)(2).  Defendants have not
consented and Plaintiff has not sought leave to amend[23].  And,

[23]Even if Plaintiff sought to amend the complaint, the
request would probably be denied.  The four additional facts were
all known, or should have been known, to Plaintiff before filing
the case.  Plaintiff has already amended once.  Discovery is
closed and dispositive motions are on file.  "[L]ate amendments
to assert new theories are not reviewed favorably when the facts
and the theory have been known to the party seeking amendment
since the inception of the cause of action."  Kaplan, 49 F.3d at
1370 (quoting Acri v. International Ass'n of Machinists, 781
F.2d 1393, 1398 (9th Cir.), cert. denied, 479 U.S. 816 (1986)).
See also State Distributors, Inc. v. Glenmore Distilleries Co.,
738 F.2d 405, 416 (10th Cir. 1984):
        In determining whether to allow amendment of a
        complaint, the court typically considers several
        factors.  These include whether the amendment will
        result in undue prejudice, whether the request was
        unduly and inexplicably delayed, was offered in good
        faith, or that the party had had sufficient opportunity
        to state a claim and failed.  E.g., Local 472, etc. v.
        Georgia Power Company, 684 F.2d 721 (11th Cir. 1982).
        Where the party seeking amendment knows or should have
        known of the facts upon which the proposed amendment is
        based but fails to include them in the original
        complaint, the motion to amend is subject to denial.
        See Svoboda v. Trane, 495 F.Supp. 367 (E.D. Mo. 1979),
        aff'd 655 F.2d 898 (8th Cir. 1981).

See also Trotter v. Regents of Univ. of New Mexico, 219 F.3d
1179, 1185 (10th Cir. 2000)("The decision to grant leave to amend
a complaint after the permissive period has ended is well within
the discretion of the trial court, particularly 'when the party
seeking amendment [knew] or should have known of the facts upon
which the proposed amended [complaint] is based but failed to
include them in the original complaint.' Pallottino v. City of
Rio Rancho, 31 F.3d 1023, 1027 (10th Cir. 1994)."); and Goewey by
Goewey v United States, 886 F.Supp. 1268, 1284 (D. S.C. 1995),
a'ffd., 106 F.3d 390 (4th Cir. 1997)(table), cert. denied, 522
U.S. 1045 (1998)( "Plaintiffs' attempt to amend their complaint
now, after the USA has filed its dispositive motions, appears to
be an eleventh hour attempt to evade a grant of summary judgment
                                                    (continued...)

without amending, these new facts and theories are not properly before the Court.  <u>Lawmaster v. Ward</u>, 125 F.3d 1341, 1346 n. 2 (10th Cir. 1997)(refusing to consider claim not raised in complaint).  <u>See also</u> <u>Davis v. Melcher (In re Melcher)</u>, 319 B.R. 761, 770 (Bankr. D. D.C. 2004) (Defendant filed a dispositive motion and plaintiff responded with an affidavit mentioning four incidents not previously pled that suggested a new theory.  "In any event, without having amended the complaint to specifically allege that the Melchers deliberately decided to cut off Davis' footer, the issue is not before the court.")

Third, the allegations in Disputed Facts 9, 10 and 11 were not disclosed in discovery.  Plaintiff's Disputed Fact 9 claims that Peter Luna misrepresented to Plaintiff that he had the authority to sign the note individually and on behalf of Veritas Mortgage.  Disputed Fact 10 states that Peter Luna misrepresented his financial condition.  Disputed Fact 11 states, without elaboration or definition, that the Defendant signed the promissory note in a "deceptive" way.  Defendants' First Set of Interrogatories item 7, Doc 47-2, p. 9, asks Plaintiff to identify specifically any misrepresentation either Defendant made to Plaintiff at any time and, if the representation was in

---

[23](...continued)
by grasping at new legal theories.  Moreover, these newly developing theories are not based on newly discovered evidence or intervening facts.")

writing, to identify its location, description and summary of its contents. Plaintiff's answer omits any reference to the misrepresentations alleged by Disputed Facts 9, 10 and 11. In contrast, the answer states: "Pete made up a promissory note on Veritas Mortgage letter head[24], and Mike Courtney, who was part of Veritas, made at least one payment to me, and all of transactions and work came from that office, so I logically believed it would be backed by Veritas Mortgage." Plaintiff's logically formed belief is not a representation by Defendant. And, the interrogatory answer does not refer to Defendants' financial condition. Nor does it state that Defendants misrepresented something by signing the note in a deceptive way.

Fourth, Disputed Facts 10 and 11 are irrelevant to a section 523(a)(2)(A) action. Regarding Fact 10, to be actionable, a misrepresentation of financial condition must be in writing. See Section 523(a)(2)(B). The answer to Interrogatory 7 makes no reference to a writing. See also Field, 516 U.S. at 66:

> The sum of all this history is two close statutory
> companions [sections 523(a)(2)(A) and (B)] barring
> discharge. One applies expressly when the debt follows
> a transfer of value or extension of credit induced by
> falsity or fraud (not going to financial condition),
> the other when the debt follows a transfer or extension
> induced by a materially false and intentionally
> deceptive written statement of financial condition upon
> which the creditor reasonably relied.

---

[24]The promissory note appears in Defendant's Motion for Summary Judgment, doc 47 exhibit 4. In fact, it is not on Veritas Mortgage letterhead.

and <u>Larazon v. Lucas (In re Lucas)</u>, 386 B.R. 332, 336 n. 5 (Bankr. D. N.M. 2008)(emphasizing fact that sections 523(a)(2)(A) and 523(a)(2)(B) are mutually exclusive.)  Regarding Fact 11, Plaintiff attributes evil motive to the way the note was signed. However, the law in New Mexico is that if a person signs a contract that contains words that bind him personally, the fact that to such signature is added additional words, such as trustee, president, or agent, does not change the character of the person signing, but are considered descriptive terms of the signer.  <u>Ricker v. B-W Acceptance Corp.</u>, 349 F.2d 892, 894 (10th Cir. 1965)(Applying New Mexico law).  Therefore, listing Veritas Mortgage as part of the address would only be considered a descriptive term of Luna.  This is especially true considering that Veritas Mortgage is not otherwise mentioned in the note, the note uniformly refers to "borrower" not "borrowers," and it was signed only once, as "Peter Luna", not as "Peter Luna, agent for:".  <u>See also</u> 7 Fletcher Cyc. Corp. § 3034:

> [I]f there is no disclosure of the principal in the body of the contract, the mere appending of words descriptive of the signer as, for example, the word "president," is insufficient of itself to relieve the signer of individual liability.  Such words as "Pres.," "Vice Pres." and "Secy.-Treas." are personal descriptions.  Thus, the mere fact that individuals who are officers of a corporation add their title to their signatures to a contract made by them does not necessarily make the contract binding on the corporation.

-23-

Therefore, the Court would not have found this as evidence of evil intent in any event.  See also Winburn v. McGuire Investment Group, #17, 220 Ga.App. 384, 385, 469 S.E.2d 477, 478 (Ga. App. 1996)(A lease specifically identified two individual tenants and the landlord.  The inclusion of the words "Pres" and "VP" after their signatures, combined with a notice address of "Fried-Win Inc." did not, as a matter of law, create an ambiguity as to who the tenants were.)  And, to the extent Plaintiff suggests that the signature was obviously deceptive, this would disprove the justifiability of his reliance.

Fifth and finally, Plaintiff's Disputed Facts 9 through 12 do not provide an adequate reference to the record.  For example, Disputed Fact 10 cites to: "See, Complaint, Plaintiff's Answers to Interrogatories, and Defendants admissions in the Motion and affidavit.  See also argument infra."  It does not state which motion[25] contains admissions or where they occur.  It also does not specify what statements in the Peter Luna affidavit are admissions.  "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment."  Malacara v. Garber, 353 F.3d 393, 405 (5th Cir. 2003) (Citations omitted.)  See also Poss v. Morris (In re Morris), 260 F.3d 654, 665 (6th Cir. 2001)("[T]he nonmoving party has an affirmative duty to direct

---

[25]There are four motions on file.

-24-

the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact."); Gamble, Simmons & Co. v. Kerr-McGee Corp., 175 F.3d 762, 773 (10th Cir. 1999)("In the absence of sufficient citation to record support for a party's allegations, we decline to search for the proverbial needle in a haystack.")  Therefore, this Court will also not search for support for the Disputed Facts. Furthermore, Plaintiff's reference to the Complaint and his Answers to Interrogatories are just a rehash of his previous allegations and arguments.  A plaintiff cannot sit back and rely on the pleadings when the Defendant has filed a properly supported motion for summary judgment.  Fed.R.Civ.P. 56(e).

Therefore, the Court does not consider the "Additional Disputed Facts."  The Court now turns to the merits of the two motions for summary judgment.

**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

As discussed above, Plaintiff's Motion for Summary Judgment seeks only partial judgment that the damages caused by the extension of the loan past the due date are nondischargeable.[26] "As such, a damages hearing may be held to determine the amount

---

[26]See Plaintiff's Motion for Summary Judgment, doc 45, p. 1. ("This Motion will demonstrate that there is no issue of material fact and that the debt is nondischargeable as a matter of law because Plaintiff justifiably relied upon Defendants' intentional misrepresentations, which caused Plaintiff to agree to an extension of time for Defendants' repayment after the debt was originally due.")

-25-

of damages sustained under the extension." Plaintiff's Amended Reply, doc 55, p. 7. Defendants' Cross-Motion, doc 46, is essentially an objection to Plaintiff's Motion for Summary Judgment and a request for section 523(d) relief. The Cross-Motion asserts two theories. First, it argues that Plaintiff's Motion for Summary Judgment does not allege a single specific representation made by the Defendants to Plaintiff. Because a misrepresentation is an essential element in a section 523(a)(2)(A) claim, Plaintiff cannot prevail. Second, it argues that because the Plaintiff's Motion restricts itself to events after default, Plaintiff cannot show damages proximately caused by representations or conduct that occurred eight months after the funding of the loan.

Plaintiff's Motion can be granted only if 1) he has demonstrated that there are no genuine issues of material fact on each element:

- a false representation,

- made with the intent to deceive,

- on which the creditor actually and justifiable relied, and

- the representation caused the creditor to sustain a loss;

and 2) Plaintiff has established that he is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. Plaintiff has not met this burden.

-26-

First, the Court cannot find a false representation.  The Motion specifically does not address any possible misrepresentation that occurred at the inception of the loan in December 2006.  Plaintiff's Memorandum Brief alleges that the Lunas were unable to repay the loan when due.  Doc 45-1, p. 8. It does not claim that this was a false representation.  The Motion states that after default, Plaintiff agreed to extend the time for repayment in exchange for a mortgage.  It does not claim that this was a false representation.  In fact, Luna executed a Real Estate Mortgage Note and Kristel Luna executed the Mortgage before a notary.  Doc 45-1, ¶¶ 7 and 9.  Therefore, Plaintiff must be claiming that the Defendants promised to record the mortgage without the intention of doing so.  The Motion does not state this, however[27].  Rather, it states "Luna would always give

---

[27]Bankruptcy Rule 7009 incorporates Fed.R.Civ.P. 9.  Rule 9(b) states: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge and other conditions of a person's mind may be alleged generally."
    "To satisfy the particularity requirement of Rule 9(b), a complaint must adequately specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiff contends the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements."  Mabon, Nugent & Co. v. Borey, 127 B.R. 727, 736 (S.D. N.Y. 1991).  See also Koch v. Koch Indus., Inc., 203 F.3d 1202, 1236 (10th Cir.), cert. denied, 531 U.S. 926 (2000) ("More specifically, this court requires a complaint alleging fraud to 'set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof.'")(quoting Lawrence Nat'l Bank v. Edmonds (In re Edmonds), 924 F.2d 176, 180 (10th
(continued...)

Marcott an excuse as to why Luna did not record the Mortgage yet." The Motion also does not allege that these excuses were misrepresentations.[28] Instead it argues "had [Defendants] acted with good and honest intent, they would have either (a) recorded the mortgage and note themselves or (b) provided the originals to Marcott to record." Doc 45-1, p. 8. However, because the Motion does not state what the actual oral agreement was between the parties, the Court is unable to determine who owed what duty to whom. Plaintiff's sense of honest intent does not mean that Defendants' actions or inactions were fraudulent. "[The Tenth Circuit] has said that fraud 'is never imputed or presumed and the court should not sustain findings of fraud upon circumstances which at the most create only suspicion.'" Houston Oilers, Inc. v. Neely, 361 F.2d 36, 41 (10th Cir.), cert. denied, 385 U.S. 840 (1966).

---

[27](...continued)
Cir.1991)). Neither Plaintiff's Amended Complaint or Plaintiff's Motion meets the requirements of Rule 9(b). Summary judgment for Defendants could be granted on this ground alone. Bank One Delaware, N.A. v. Hamilton (In re Hamilton), 2004 WL 1898218 at *3 (Bankr. D. Colo. 2004).

Furthermore, when there are multiple defendants, the instances of fraud must be plead separately as to each defendant. Mabon, Nugent & Co., 127 B.R. at 736; Koch, 203 F.3d at 1237. Neither Plaintiff's Amended Complaint or Plaintiff's Motion accomplish this.

[28]The facts are even less clear after reading Plaintiff's affidavit, doc 45-3, ¶ 7. ("I agreed to extend the time for repayment only when both agreed to give me a new note and a mortgage on real property.")

Second, proof of intent to defraud is always a difficult task when a plaintiff seeks summary judgment. See GMAC, Inc. v. Coley (In re Coley), 433 B.R. 476, 493 and n. 24 (Bankr. E.D. Pa. 2010). And, in this case, the Court does not find that Plaintiff established a lack of intent to repay when the Defendants agreed to execute a mortgage or (if applicable) to record it. In fact, Defendants did make payments on the debt when able to, and agreed to Plaintiff's demand to give a mortgage when there was equity in the house sufficient to pay all creditors. A simple breach of contract does not prove fraudulent intent. Williams v. Zachary (In re Zachary), 147 B.R. 881, 883-84 (Bankr. N.D. Tex. 1992)("Therefore, a mere breach of contract by the debtor without more, does not imply existence of actual fraud for purposes of the exception to discharge under § 523(a)(2)(A).")(citing Leeb v. Guy (In re Guy), 101 B.R. 961, 978 (Bankr. N.D. Ind. 1988)); First Baptist Church v. Maurer (In re Maurer), 112 B.R. 710, 713 (Bankr. E.D. Pa. 1990)("It is well established that a finding of fraud cannot be premised upon a mere breach of contract. Instead, to be actionable as fraud, the plaintiff must establish that the debtor entered into the contract with the intent of never complying with its terms.")(Citations omitted.) Compare Coley, 433 B.R. at 493 (A misstatement in a debtor's financial statement is insufficient to establish that the debtor intended to deceive the creditor.)

-29-

Finally, Plaintiff did not establish that the lack of a recorded mortgage caused him any damages at all. In his Amended Reply, doc 55, p. 6, ¶ II(D), he states: "[A]s Plaintiff delayed in collection of the debt and attempting to garnish Defendants' wages or take other collection activities, Plaintiff has been damaged. Further, Plaintiff was denied secured creditor standing as opposed to unsecured creditor standing with respect to the collateralized home." Nothing in the record suggests that Plaintiff was not free to commence collection activities at any time. There was no formal forbearance agreement. The details of the oral agreement between the Defendants and Plaintiff after default are not in the record. As to garnishment, Plaintiff would have had to pursue collection to a judgment before he could garnish; his lack of a judgment is clearly not Defendants' fault. And, his secured status is only speculative. Bankruptcy Code section 506(a)(1) provides:

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

-30-

Therefore, the mere possession of a mortgage does not <u>ipso facto</u> mean the creditor is secured.  The creditor is secured only to the extent there is equity to support the claim.  Peter Luna's affidavit, doc 53, p. 3, ¶¶ 21 and 22, demonstrates that there was no equity in the property over and above prior liens after it had remained on the market for an extended time period.  This suggests that Plaintiff, even if the mortgage had been recorded, would have remained unsecured and obtained nothing from the property when it ultimately was foreclosed upon.  In other words, all the damages were incurred by the time Defendants told Plaintiff that they could not repay the loan.  The damages were incurred because Defendants could not repay.  No damages flowed from the extension.

Section 523(a)(2)(A) requires that a plaintiff prove, as an element, that the damage was caused by the misrepresentation. <u>Riebesell</u>, 586 F.3d at 789 ("[A] creditor must prove ... the debtor's representation caused the creditor to sustain a loss."). <u>See also</u> Restatement § 525 ("One ... is liable to the other in deceit for pecuniary loss caused to him by his justifiable reliance upon the misrepresentation.")  Plaintiff argues that under <u>John Deere Co. v. Gerlach (In re Gerlach)</u>, 897 F.2d 1048, 1051 (10th Cir. 1990), that dischargeability is an "all or nothing" proposition, and that an extension of a loan based on fraud renders the entire debt nondischargeable.  The Court

-31-

disagrees with this broad interpretation of <u>Gerlach</u>.  First, although the <u>Gerlach</u> court made that statement, it later referred to the legislative history of section 523(a)(2) and quoted:

> If an initial loan is made subject to a false financial statement and new money is advanced under a subsequent loan that is not made under conditions of fraud or false pretenses, then only the initial amount of the loan made on the original financial statement is invalidated and excepted from discharge. On the other hand, where the original financial statement is made under nonfraudulent conditions and the entire loan in addition to new money is advanced under a subsequent false financial statement, the entire loan is made under fraudulent conditions.

<u>Id.</u>  In this case, Marcott made no subsequent advances. Furthermore, <u>Gerlach</u>'s statement that dischargeability is an "all or nothing" proposition is belied by that court's remand "for a determination of the amount of defendant's guaranty debt to John Deere that was obtained through defendant's fraud."

In 1998 the United States Supreme Court clarified the meaning of "to the extent obtained by" in section 523.

> Moreover, the phrase "to the extent obtained by" in § 523(a)(2)(A), as the Court of Appeals recognized, does not impose any limitation on the extent to which "any debt" arising from fraud is excepted from discharge. "[T]o the extent obtained by" modifies "money, property, services, or ... credit"–not "any debt"–so that the exception encompasses "any debt ... for money, property, services, or ... credit, to the extent [that the money, property, services, or ... credit is] obtained by" fraud.  The phrase thereby makes clear that the share of money, property, etc., that is obtained by fraud gives rise to a nondischargeable debt.  Once it is established that specific money or property has been obtained by fraud, however, "any debt" arising therefrom is excepted from discharge.

-32-

<u>Cohen v. de la Cruz</u>, 523 U.S. 213, 218 (1998).  In other words,
if a debt is made up of several "shares" and one share is money
or property obtained by fraud, the other shares are
dischargeable.  But the share obtained by fraud, and all debts
arising from and related to that share (<u>e.g.</u>, punitive or treble
damages) are nondischargeable.  <u>See also</u> <u>Archer v. Warner</u>, 538
U.S. 314, 325-26 (2003)(Thomas, J., dissenting):

> In interpreting [section 523(a)(2)], the Court has
> recognized that, in order for a creditor to establish
> that a debt is not dischargeable, he must demonstrate
> that there is a causal nexus between the fraud and the
> debt.  <u>See</u> <u>Cohen v. de la Cruz</u>, 523 U.S. 213, 218, 118
> S.Ct. 1212, 140 L.Ed.2d 341 (1998) (describing §
> 523(a)(2)(A) as barring discharge of debts " 'resulting
> from' " or " 'traceable to' " fraud (quoting <u>Field v.
> Mans</u>, 516 U.S. 59, 61, 64, 116 S.Ct. 437, 133 L.Ed.2d
> 351 (1995))).  Indeed, petitioners conceded at oral
> argument that the "obtained by" language of § 523(a)(2)
> requires a creditor to prove that a debtor's fraud is
> the proximate cause of the debt.  Tr. of Oral Arg. 10,
> 12; <u>see also</u> 1 Am.Jur.2d, Actions § 57, p. 760 (1994)
> ("What is essential is that the wrongful act charged be
> the proximate cause of the damage; the loss must be <u>the
> direct result of, or proximately traceable</u> to, the
> breach of an obligation owing to the plaintiff"
> (emphasis added)).

-33-

In light of these, and many cases following similar reasoning[29],

[29]See, e.g., McCrory v. Spigel (In re Spigel), 260 F.3d 27,
32-33 (1st Cir. 2001):
> Reading [section 523(a)(2)(A)] to require ... a direct
> link [between the alleged fraud and the creation of the
> debt] is supported by the legislative history.  Prior
> to 1984, some courts had interpreted § 523(a)(2)(A) as
> preventing the discharge of an entire debt even though
> the fraudulent conduct of the debtor was directly
> related only to a part of that debt.  See, e.g.,
> Birmingham Trust Nat'l Bank v. Case, 755 F.2d 1474,
> 1477 (11th Cir. 1985) (holding that debtor's
> misrepresentations regarding ownership of collateral
> caused entire debt, rather than just the value of the
> collateral, to be nondischargeable).  Congress
> responded by adding "to the extent obtained by" to §
> 523(a)(2), Pub.L. 98-353 § 454(a)(1)(B), a change that
> other courts have interpreted as "expressly limit[ing]
> the exception to discharge to the extent that [the
> debt] was actually obtained by the fraudulent conduct."
> Muleshoe State Bank v. Black, 77 B.R. 91, 92 (N.D.
> Texas 1987); see also Nova Home Health Servs., Inc. v.
> Casagrande, 143 B.R. 893, 899 n. 6 (Bankr. W.D. Mo.
> 1992).  Thus, in order to prevail in the adversary
> proceeding, the McCrorys must show that the debt Spigel
> owes to them "arises as a direct result of the debtor's
> misrepresentations or malice." Century 21 Balfour Real
> Estate [v. Menna], 16 F.3d [7] at 10 [(1st. Cir.
> 1993)].

(Incidentally, Gerlach also cites Birmingham Trust Nat'l Bank for
the "all or nothing" proposition.  897 F.2d at 1051.); McClellan
v. Cantrell, 217 F.3d 890, 894 (7th Cir. 2000)("[S]ection
523(a)(2)(A) is intended to reach fraud in the inception of a
debt-- fraud that created the debt."); Fetty v. DL Carlson
Enterprises, Inc. (In re Carlson), 426 B.R. 840, 857 (Bankr. D.
Idaho 2010):
> Based on the language of § 523(a)(2)(A) and the Supreme
> Court's ruling in Cohen, a plaintiff must show the
> "specific money or property" a debtor obtained by
> fraud.  It follows that, "[i]f the property or services
> were obtained before the making of any false
> representation, subsequent misrepresentations will have
> no effect on dischargeability."  4 Collier on
> Bankruptcy ¶ 523.08[1][d] at 523-45 (Alan N. Resnick &
> Henry J. Sommer eds., 16th ed.2009).;

(continued...)

-34-

the Court finds that even if Defendants misrepresented something at the time of the extension, no damages flowed from that misrepresentation. In other words, that misrepresentation would not have been the proximate cause of the damages.

The Court will enter an Order denying Plaintiff's Motion for Summary Judgment.

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

While Plaintiff's Motion for Summary Judgment sought only partial judgment for damages caused by the extension of the loan past the due date, Defendants seek summary judgment as to the entire complaint based on a single theory: Plaintiff has no evidence that either Defendant made a misrepresentation. See Doc 47, p. 5.

Misrepresentation is an element Plaintiff must establish to prevail on a § 523(a)(2)(A) complaint. Riebesell, 586 F.3d at 789. When a defendant points out a total lack of evidence to support a necessary element of plaintiff's case, the plaintiff

---

[29](...continued)
Rescuecom Corp. v. Khafaga (In re Khafaga), 419 B.R. 539, 547-48 (Bankr. E.D. N.Y. 2009)(Plaintiff's damages occurred at the time of the breach. Subsequent concealment of information and alleged false pretenses were irrelevant. Plaintiff would have been in the same situation either way. Debt was discharged.); Sandia Laboratory Federal Credit Union v. Torrez (In re Torrez), 415 B.R. 842, 848 (Bankr. D. N.M. 2009)(No new money was advanced as a result of the alleged misrepresentations. Therefore, they did not "cause" anything. Damages were caused by Defendants' overall financial condition combined with a declining real estate market.)

cannot rely on the allegations in the pleadings. Fed.R.Civ.P. 56(e)(2). Rather, plaintiff must point to specific evidence in the record or put this specific evidence into the record to defeat the defendant's motion for summary judgment.[30] Id. Plaintiff did not meet the challenge.

The Court reviewed the file for the existence of allegations of misrepresentations. The following table summarizes that review.

| Complaint, doc 10, paragraph number and allegation | Comment (Note: superscripts reference endnotes at bottom of opinion.) |
| --- | --- |
| ¶9    Peter Luna claimed he had a business opportunity, needed to borrow money, and used the name and reputation of Veritas Mortgage. | Denied in answer. Therefore, not an established fact. However, later Defendants did establish Peter Luna was an employee of Veritas, he had a business opportunity and he needed to borrow money. Luna affidavit, doc 53, ¶¶ 2,3,7,8, and 11. Plaintiff offered no contrary evidence.[a] This does not establish in the record a misrepresentation. |

---

[30]Plaintiff's Amended Response is confused on this point. Doc 56, p. 5. ("Defendants limit their entire Motion to that one element [misrepresentation] of a 523 claim. Therefore, Defendants have not illustrated any basis for the granting of a Rule 56 Motion.") This is incorrect. This is exactly the situation in which the Court dismisses the case. See Koch, 203 F.3d at 1212 ("[F]ailure of proof of an essential element renders all other facts immaterial.") See also Plaintiff's Amended Reply, doc 55, p. 8. ("Defendants' argument, at best, illustrates that the separate issue of procurement by false pretenses may need to be further litigated.") The Court disagrees. Defendants pointed out the lack of evidence of any misrepresentation. Absent a misrepresentation, further litigation is unwarranted.

| | | |
|---|---|---|
| ¶10 | Plaintiff later was informed by Veritas Mortgage that Peter Luna was not acting within the course and scope of his employment. | Denied in answer. Furthermore, this is hearsay and the speaker is not identified. It is also not a representation by Defendants. Therefore, not an established fact. However, Luna affidavit ¶¶ 2 and 3 establish he was an employee. Plaintiff offered no further evidence to establish the allegation. |
| ¶11 | Peter Luna informed Plaintiff that the investment "did not work out" and the note would be satisfied at the sale of Defendants' home. | Denied in answer. Therefore, not an established fact. There is no evidence that the investment "did" work out. There is also no evidence that the note would not be satisfied at the sale of the home. As it turned out, the note was not satisfied at that time. But, a promise regarding a future event is generally not a representation.[b] Plaintiff would need to prove that Defendants did not intend to pay at the time they made that representation[c], and there is no evidence of this in the record. In fact, there is no evidence of the oral agreement in the record at all. |
| ¶13 | He stated that Veritas Mortgage was a borrower and he was authorized to enter into the transaction on their [sic, its] behalf. | Denied in answer. Therefore, not an established fact. Peter Luna's affidavit ¶¶ 2 and 3 establish he was an employee. Plaintiff offered no further evidence to establish the allegation. |
| ¶14 | Defendant Kristal Luna knew that there was no equity in the home and Defendants had no intention to repay plaintiff. | Denied in answer. Therefore, not an established fact. Plaintiff offered no further evidence to establish the allegation. |

In summary, Plaintiff alleges many misrepresentations.

Defendants denied all of them and filed a motion for summary

judgment.  Plaintiff demonstrated no contrary evidence and rested on its allegations.  Defendants' Motion for Summary Judgment is well taken.  The Court will enter an Order dismissing the complaint with prejudice.

## DEFENDANTS' § 523(d) CLAIM

Defendants requested relief under Section 523(d) if they prevailed in this case.  That section provides:

> If a creditor requests a determination of dischargeability of a consumer debt under subsection (a)(2) of this section, and such debt is discharged, the court shall grant judgment in favor of the debtor for the costs of, and a reasonable attorney's fee for, the proceeding if the court finds that the position of the creditor was not substantially justified, except that the court shall not award such costs and fees if special circumstances would make the award unjust.

In Household Bank, N.A. v. Sales (In re Sales), 228 B.R. 748, 752 (10th Cir. BAP 1999), the Court stated:

> Under section 523(d), if the debtor shows that the creditor filed a dischargeability action under section 523(a)(2), the debt sought to be discharged is a "consumer debt," and that the debt was discharged, the burden shifts to the creditor to show that its position was "substantially justified" or, if not, that "special circumstances" would make an award "unjust."  If, in the bankruptcy court's discretion, it finds that the position of the creditor was not substantially justified and that there are no special circumstances that would make the award unjust, it is required, as argued by the debtor, to award fees and costs to the debtor under section 523(d).

(Citations omitted).

This adversary proceeding was brought under Section 523(a)(2). The debt at issue was a consumer debt[31]. See Luna affidavit, doc 53, ¶ 11 ("The purpose of the loan was to enable me to pay my current living expenses. The loan was necessary because I was behind on my personal mortgage and on many other personal obligations in December of 2006.") The Court is dismissing the proceeding. Therefore, the burden has shifted to Plaintiff to show that its position was "substantially justified" or, if not, that "special circumstances" would make an award "unjust." The Court will enter an Order setting a deadline for 1) for Defendants to file a statement of fees and costs incurred to date, accompanied by time records redacted as needed to protect the attorney-client and work product privileges, and 2) for Plaintiff to submit a statement of relevant proposed facts relating to justification, to which Defendants may respond. The Court can then conduct a hearing, if necessary, to resolve the issue.

_____
Honorable James S. Starzynski
United States Bankruptcy Judge

---

[31]"The term "consumer debt" means debt incurred by an individual primarily for a personal, family, or household purpose." 11 U.S.C. § 101(8).

-39-

Date Entered on Docket:  January 18, 2011

Copies to:

Brandon Huss
Wallin & Briones Law Firm, LLC
8500 Menaul Blvd NE
Albuquerque, NM 87112

Thomas R Briones
4263 Montgomery Blvd NE
Ste I-140
Albuquerque, NM 87109-6747

Michael K Daniels
PO Box 1640
Albuquerque, NM 87103-1640


**ENDNOTES**
a.    Regarding the "business opportunity," Plaintiff states:
"Defendant has attached an affidavit containing a story about his
investment in Vista Studios.  Defendant has offered no evidence
of his alleged investment in Vista Studios or even of its
existence." Amended Response, doc 56, p. 6.  Peter Luna's
affidavit, doc 53, ¶ 8, specifically states that Peter Luna
invested $10,000 in Vista Studios.  This is sufficient and
competent evidence to support a motion for summary judgment.
Instead of citing to or providing some evidence that actually
contradicts this evidence, Plaintiff essentially calls Defendant
a liar.  This is not adequate.  See Frishberg v. Janac (In re
Janac), 407 B.R. 540, 550 (Bankr. S.D. N.Y. 2009)("Plaintiff
cannot meet his burden on summary judgment by speculating on what
he might have done if he had believed something other than what
Defendant told him ..., or by proposing to offer hearsay and
character evidence to show that Defendant is a liar or a con
artist.")
      In the Amended Response, doc 56, p. 6, Plaintiff also
states: "Defendant Luna also told Plaintiff that the purpose of
the loan was to allow Peter Luna could [sic] take advantage of a
business opportunity in some alleged movie studios", and cites to
the Amended Complaint, ¶ 9.  But, ¶ 9 was denied.  And,
Plaintiff's affidavit does not address events taking place before
the loan went into default.  Therefore, there is not a shred of
evidence in the record to support this claim.  The Court also
notes that this claim is 1) not in the Amended Complaint and 2)
not disclosed in Plaintiff's answers to discovery.

-40-

b.  <u>See, e.g.</u>, <u>Kuper v. Spar (In re Spar)</u>, 176 B.R. 321, 327
(Bankr. S.D. N.Y. 1994)(citing cases).  <u>See also</u> <u>Garaza v. Baker</u>
<u>(In re Baker)</u>, 139 B.R. 692, 694 (Bankr. N.D. Ohio 1992)("[A]
mere promise as to future conduct is not sufficient to make a
debt nondischargeable, even though there is no excuse for the
subsequent breach.")

c.  <u>See</u> <u>General Electric Capital Corp. v. Acosta (In re Acosta)</u>,
406 F.3d 367, 372 (5th Cir. 2005)(Debtor must know that statement
is false at the time.)  <u>Accord</u> <u>Allen v. Romero (In re Romero)</u>,
535 F.2d 618, 622 (10th Cir. 1976)(Debtor must have "knowledge of
falsity" when making the representation.)(decided under former
law).